**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BENNETT GRIMES, | Case No. 2:19-cv-00663-GMN-EJY |
| Petitioner, | **ORDER** |
| v. | |
| BRIAN WILLIAMS, et al., | |
| Respondents. | |

**I.     Introduction**

This is a habeas corpus matter under 28 U.S.C. § 2254.  Currently before the court is the petition for a writ of habeas corpus.  ECF No. 7.  Respondents have filed an answer.  ECF No. 29.  Petitioner has filed a reply.  ECF No. 34.  The court finds that relief is not warranted, and the court denies the petition.

**II.     Factual Background**

The Nevada Supreme Court's decision on direct appeal contains a concise statement of the facts, and the court repeats it here:

> [E]vidence was presented that Grimes forced his way into his estranged wife's apartment shortly after she and her mother returned home in violation of a temporary protective order against him.  Grimes stood near the front door begging and pleading with his wife to take him back.  A woman's voice could be heard on the 911 recording repeatedly telling Grimes to leave the apartment.  Grimes' wife stood about five to seven feet away from the front door, near the kitchen counter, while her mother waited outside on the balcony for the police to arrive.  When the

1

mother heard her daughter scream out, "Mom, he's stabbing me," she turned around and saw her daughter on the ground near the front door with Grimes on top of her. According to the victim, Grimes walked over to the kitchen counter, grabbed a knife from a drying rack next to the kitchen sink, and dragged her back to the front door before stabbing her 21 times.

ECF No. 22-33 at 2-3. To this, the court adds a few more items of evidence. First, the victim's mother testified that Grimes was waiting for his wife and mother-in-law to return, concealed behind stairs. ECF No. 20-1 at 165. Second, the victim testified that after she repeatedly told him to leave, Grimes said, "OK," before taking the knife and attacking her. ECF No. 20-1 at 120. Third, Officer Hoffman testified that police officers had arrived shortly before Grimes attacked his wife. When they heard the screaming, one officer who was near the balcony went over the low wall, entered the apartment, and tackled Grimes who had the knife in his right hand with his left hand around the victim's neck in a headlock. Ex. 41 at 25-28 (ECF No. 20-1 at 26-29).

### III.    Procedural Background

Grimes went to a jury trial in the state district court. The jury found him guilty of count 1, attempted murder with the use of a deadly weapon in violation of a temporary protective order, count 2, burglary while in possession of a deadly weapon in violation of a temporary protective order, and count 3, battery with the use of a deadly weapon constituting domestic violence resulting in substantial bodily harm in violation of temporary protective order.[1] ECF No. 22-1, 22-11. Grimes appealed, and the Nevada Supreme Court affirmed. Ex. 58 (ECF No. 22-13), Ex. 78 (ECF No. 22-33).

While the direct appeal was pending, Grimes filed a motion to correct an illegal sentence. Ex. 69 (ECF No. 22-24). The state district court denied the motion. Ex. 99 (ECF No. 23-19). Grimes appealed. Ex. 89 (ECF No. 23-9). The Nevada Supreme Court affirmed, ruling that the Grimes' claims fell outside the narrow scope of claims permissible in a motion to correct an illegal sentence. Ex. 114 (ECF No. 23-34).

Grimes filed a proper-person post-conviction habeas corpus petition in the state district court. Ex. 83 (ECF No. 23-3). The state district court appointed counsel, and Grimes filed a counseled supplemental petition. Ex. 123 (ECF No. 24-3). The state district court held an

---

[1] The court will refer to these offenses as attempted murder, burglary, and battery, except where necessary.

2

1   evidentiary hearing.  Ex. 128 (ECF No. 25-1).  The state district court then denied the petition.

2   Ex. 132 (ECF No. 25-5).  Grimes appealed.  Ex. 129 (ECF No. 25-2).  The Nevada Supreme

3   Court transferred the appeal to the Nevada Court of Appeals, which affirmed.  Ex. 141 (ECF No.

4   26-3), Ex. 142 (ECF No. 26-4).  Grimes petitioned for review of the decision, and the Nevada

5   Supreme Court denied the petition.  Ex. 143 (ECF No. 26-5), Ex. 146 (ECF No. 26-8).

6   　　　Grimes then commenced this action.  The court dismissed ground 1 of the petition because

7   it lacked merit.  ECF No. 6.  Respondents have answered the remaining grounds.  ECF No. 29.

8   **III.　　Legal Standard**

9   　　　**A.　　Reviewing State-Court Decisions**

10   　　　Congress has limited the circumstances in which a federal court can grant relief to a

11   petitioner who is in custody pursuant to a judgment of conviction of a state court.

12   
13   　　　An application for a writ of habeas corpus on behalf of a person in custody
　　　pursuant to the judgment of a State court shall not be granted with respect to any
　　　claim that was adjudicated on the merits in State court proceedings unless the
14   　　　adjudication of the claim—

15   　　　(1) resulted in a decision that was contrary to, or involved an unreasonable
16   　　　application of, clearly established Federal law, as determined by the Supreme
　　　Court of the United States; or

17   　　　(2) resulted in a decision that was based on an unreasonable determination of the
　　　facts in light of the evidence presented in the State court proceeding.

18   28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

19   merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

20   Richter, 562 U.S. 86, 98 (2011).

21   
22   　　　Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is
　　　shown that the earlier state court's decision "was contrary to" federal law then
　　　clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor,
23   　　　529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such
　　　law, § 2254(d)(1); or that it "was based on an unreasonable determination of the
24   　　　facts" in light of the record before the state court, § 2254(d)(2).

25   Richter, 562 U.S. at 100.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

26   law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state

27   court's determination that a claim lacks merit precludes federal habeas relief so long as

28   

3

1    'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation

2    omitted).

3        [E]valuating whether a rule application was unreasonable requires considering the
         rule's specificity.   The more general the rule, the more leeway courts have in
4        reaching outcomes in case-by-case determinations.

5    Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

6        Under § 2254(d), a habeas court must determine what arguments or theories
         supported or, as here, could have supported, the state court's decision; and then it
7        must ask whether it is possible fairminded jurists could disagree that those
         arguments or theories are inconsistent with the holding in a prior decision of this
8        Court.

9    Richter, 562 U.S. at 102.

10       As a condition for obtaining habeas corpus from a federal court, a state prisoner
         must show that the state court's ruling on the claim being presented in federal court
11       was so lacking in justification that there was an error well understood and
         comprehended in existing law beyond any possibility for fairminded disagreement.
12

13   Id. at 103.

14       **B.    Effective Assistance of Counsel**

15   "[T]he right to counsel is the right to the effective assistance of counsel." McMann v.

16   Richardson, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of

17   counsel must demonstrate (1) that the defense attorney's representation "fell below an objective

18   standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the

19   attorney's deficient performance prejudiced the defendant such that "there is a reasonable

20   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

21   been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance

22   claim to approach the inquiry in the same order or even to address both components of the inquiry

23   if the defendant makes an insufficient showing on one." Id. at 697.

24       Strickland expressly declines to articulate specific guidelines for attorney performance

25   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

26   duty to advocate the defendant's cause, and the duty to communicate with the client over the

27   course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties

28   so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .

4

Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 562 U.S. 86, 105 (2011) (citations omitted).

## IV.   Discussion

The petition contains 9 grounds. Grimes has adapted his opening brief on post-conviction appeal into grounds 1 through 5. The court has dismissed ground 1. Grounds 2 through 4 are claims of ineffective assistance of counsel. Ground 5 is a claim that the cumulative effect of trial-court errors and errors of counsel require relief. Grimes has adapted his opening brief on direct

5

appeal into grounds 6 through 9.  Grounds 6 through 8 are claims of trial-court error.  Ground 9 is a claim that the cumulative effect of trial-court errors require relief.

The court will address these grounds out of the order presented.  For example, ground 6 concern's Grimes' efforts to have the jury instructed on self-defense.  Ground 4, a claim that appellate counsel failed to appeal the denial of a motion to dismiss for failure to collect evidence, refers to evidence that Grimes argued would have helped his defense of self-defense.  Additionally, discussion of the other grounds would be more clear if the court resolved the self-defense-related claims first.

## A.      Ground 6 Is Without Merit

Grimes' theory of defense was that his wife, standing near the dish rack, took a steak knife from the rack and advanced on Grimes, standing near the front door.  The theory continues that Grimes' wife threatened him, Grimes tried to take the knife, and in the struggle his wife was stabbed.[2]  Grimes asked for the trial court to instruct the jury on self-defense.  The trial court declined, reasoning that without Grimes' testimony no evidence supported the defense.  At the time of the ruling, Grimes still had the ability to testify, but he decided not to testify.  In ground 6, Grimes argues that the trial court erred when it forced him to choose between his right not to testify and a jury instruction on self-defense.  On this issue, the Nevada Supreme Court held on direct appeal:

> Second, Grimes contends that the district court erred by (1) placing him in a position where he had to choose between remaining silent and forfeiting his right to present his theory of self-defense or taking the witness stand, (2) refusing to instruct the jury on self-defense, and (3) prohibiting him from arguing his theory of self-defense to the jury.  So long as there is some evidence, "[a] defendant has the right to have the jury instructed on a theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be, regardless of who introduces the evidence and what other defense theories may be advanced." . . .  "To require a defendant to introduce evidence in order to be entitled to a specific jury instruction on a defense theory would violate the defendant's constitutional right to remain silent by requiring that he forfeit that right in order to obtain instructions." . . .  "During closing argument, trial counsel enjoys wide latitude in arguing facts and drawing inferences from the evidence." . . .
>
> Grimes' theory of self-defense was that the victim came at him with a knife to get him to leave the apartment, a struggle ensued, and he overpowered her in self-

---

[2] Grimes also received a cut to a finger that required treatment.

1

2

3

4

5

6

7

8

9

10

11

defense fearing for his life.  In support of this theory, Grimes cited evidence that the victim's DNA was found on the knife handle, the knife had been recently washed and was sitting in the drying rack, only the victim knew where the knife was located because it was not readily visible behind the kitchen counter bar top, the victim was standing next to the knife while Grimes was standing five to seven feet away begging the victim to take him back, and his DNA was not found on the knife.  Grimes also wanted to argue that the victim's version of the events was not credible because there was no reason for Grimes to drag the victim back to the front door before stabbing her.  The district court refused to instruct the jury on self-defense and prohibited Grimes from presenting his theory to the jury because he did not testify and, even though Grimes could place the victim with the knife, the court "[could not] think of any logical inference that gets her going after him with the knife in a deadly manner."  We disagree.  A rational juror could certainly conclude that a woman who grabs a knife after her estranged husband breaks into her apartment in violation of a temporary protective order might use that knife to injure him.  Grimes' testimony was not needed in order for him to argue self-defense and ask the jury to draw favorable inferences from the evidence.  If Grimes' reasoning was faulty, "such faulty reasoning is subject to the ultimate consideration and determination by the jury." . . .  We conclude that the district court erred by denying Grimes an instruction on self-defense and prohibiting him from asking the jury to draw inferences supporting his theory of self-defense.

12

13

14

15

16

17

18

19

20

21

However, we conclude that this error was harmless beyond a reasonable doubt.  See Valdez v. State, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008) (citing Chapman v. California, 386 U.S. 18, 24 (1967)).  Even if the jury would have believed that the victim attacked Grimes with a knife, Grimes was only permitted to use "[r]esistance sufficient to prevent the offense."  NRS 193.240.  A reasonable juror could not have believed that, once Grimes wrestled the knife away from the victim, it was necessary for him to stab her 21 times to defend himself.  See Pineda v. State, 120 Nev. 204, 212, 88 P.3d 827, 833 (2004) (right to self-defense exists when there is a reasonably perceived apparent danger or actual danger); State v. Comisford, 41 Nev. 175, 178, 168 P. 287, 287 (1917) (amount of force justifiable is that a reasonable man would believe is necessary for protection); People v. Hardin, 102 Cal.Rptr.2d 262, 268 n. 7 (Ct.App.2000) (right to use force in self-defense ends when danger ceases).  Furthermore, Grimes had a duty to retreat before using deadly force because he did not have a right to be present at the location where he used deadly force, see NRS 200.120(2)(b), and was actively engaged in conduct in furtherance of criminal activity, see NRS 200.120(2)(c); NRS 33.100; NRS 200.591(5)(a).  There was no evidence that Grimes attempted to leave the apartment at any time before the altercation.  For these reasons we conclude that Grimes is not entitled to relief on this claim.

22

23

24

25

26

27

28

Ex. 78 at 2-5 (ECF No. 22-33 at 3-6) (some citations omitted).  The Supreme Court has never

clearly established whether the right to present a defense includes a right to have the jury

instructed on it.  Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993).  "[S]uch an expansive reading

of our cases would make a nullity of the rule reaffirmed in Estelle v. McGuire, [502 U.S. 62

(1991)], that instructional errors of state law generally may not form the basis for federal habeas

relief."  Id. at 344.  Consequently, the Nevada Supreme Court's holding cannot be contrary to any

clearly established federal law as determined by the Supreme Court of the United States.  See

<u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006).  Ground 6 is without merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 6.

### B.    Ground 4 Is Without Merit

The court turns now to ground 4 because it is related to Grimes' efforts toward a defense of self-defense.  Before trial, Grimes moved to dismiss because for failure to gather evidence.  Ex. 23 (ECF No. 18-23).  Grimes argued that the prosecution failed to test the steak knife for the fingerprints and blood of both Grimes and his wife, which in turn he argued would prove his defense of self-defense.  <u>Id.</u> at 3 (ECF No. 18-23 at 4).  The state district court denied the motion.  Ex. 32 (ECF No. 19-7).  Grimes did not raise the denial of the motion as an issue on direct appeal.  In ground 4, Grimes argued that appellate counsel provided ineffective assistance by not raising the issue.  In the appeal from the denial of Grimes' state post-conviction petition, the Nevada Court of Appeals held:

> Sixth, Grimes claimed appellate counsel should have challenged the district court's denial of Grimes' pretrial motion to dismiss for failure to gather evidence.  Grimes failed to demonstrate deficiency or prejudice.  The State gathered the evidence: the bloody steak knife.  The gravamen of Grimes' complaint was that the State did not test the steak knife for fingerprints or DNA evidence.  Grimes failed to demonstrate the State had an obligation to test the evidence.  Further, Grimes failed to demonstrate the test results would have had a reasonable probability of changing the results of the proceeding.  <u>See</u> <u>Daniels v. State</u>, 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998) (holding dismissal of charged for failure to gather evidence is only a possibility where the failure was in bad faith and there is a reasonable probability of a different result had the evidence been collected).

Ex. 142 at 4-5 (ECF No. 26-4 at 5-6).

Three of the items of evidence on the steak knife needed no testing.  Eyewitnesses saw Grimes holding the knife, stabbing his wife.  Grimes also had a cut on his finger.  Consequently, it was beyond any doubt that Grimes' fingerprints and both people's blood were on the knife.  Testing might have revealed the fourth item of evidence, the wife's fingerprints, but anyone could reasonably infer that the wife's fingerprints would be on the knife.  After all, it was her knife.

Additionally, the court turns to the Nevada Supreme Court's harmless-error analysis about the self-defense instruction, quoted above.  Self-defense did not require Grimes to stab his wife

21 times.[3]  Even if the prosecution had tested the knife for fingerprints and blood, no reasonable juror would have determined that Grimes acted in self-defense.

The Nevada Court of Appeals thus reasonably concluded that appellate counsel did not provide ineffective assistance.  Ground 4 is without merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 4.

**C.      Ground 7 Is Without Merit**

Ground 7 concerns the conviction for burglary.  The trial court gave the jury these instructions:

> Every person who enters any apartment or house, with the intent to commit assault or battery on any person and/or any felony therein is guilty of Burglary.

Ex. 20 (ECF No. 21-3 at 20).

> It is not necessary that the State prove the defendant actually committed an assault or battery and/or felony in the apartment or home after he entered in order for you to find him guilty of burglary.  The gist of the crime of burglary is the unlawful entry with criminal intent.  Therefore, a burglary was committed if the defendant entered the building with the intent to commit assault or battery and/or a felony regardless of whether or not that crime occurred.

Id. (ECF No. 21-3 at 22).

> The intent with which entry was made is a question of fact which may be inferred from the defendant's conduct and all other circumstances disclosed by the evidence.

Id. (ECF No. 21-3 at 23).

> Every person who unlawfully breaks and enters or unlawfully enters any apartment or house may reasonably be inferred to have broken and entered or entered it with intent to commit grand or petit larceny, assault or battery on any person or a felony therein, unless the unlawful breaking and entering or unlawful entry is explained by evidence satisfactory to the jury to have been made without criminal intent.

Id. (ECF No. 21-3 at 24).

After the jury returned its verdicts and the trial court discharged the jurors, the trial court told the parties:

---

[3] Grimes would have stabbed his wife at least 22 times, but a police officer tackled Grimes before he could complete the 22d stab.  Ex. 41 at 25-28 (ECF No. 20-1 at 26-29).

1
2
3
4
5

THE COURT:  The Court did receive a note from the jury panel.  I did not respond to the note because my only response would have been read the jury instructions.  But it will be marked as Court's Exhibit next in line.  The note, the content of it was communicated to myself, but I did not respond to it.  And the note was:  Does criminal intent have to be established before entering a structure or can intent change during the chain of events for the charge of burglary?  I didn't respond to it because my only response would have been continue to deliberate and look at the instructions.

6   Ex. 45 at 40 (ECF No. 21-4 at 41).  The defense initially agreed with the judge.  Id.  Upon further

7   reflection, the defense moved for a new trial based upon the judge not informing the parties of the

8   note.  Ex. 47 (ECF No. 22-2).  The state district court denied the motion.  Ex. 50 (ECF No. 22-5).

9   Grimes raised the issue on appeal, and the Nevada Supreme Court held:

10
11
12
13
14
15
16
17

Fourth, Grimes contends that the district court's failure to disclose a jury note to counsel violated his constitutional right to due process and Sixth Amendment right to counsel at every critical stage of the proceedings.  During deliberations the jury sent a note to the district court and asked whether "criminal intent [has] to be established before entering the structure, or can intent change during the chain of events for the charge of burglary?"  Without informing or consulting with counsel, the district court chose not to answer the jury's question, noting after the jury verdict that, "I didn't respond to it because my only response would have been [to] continue to deliberate and look at the instructions."  The jury had already been instructed that, "[e]very person who enters any apartment . . . , with the intent to commit assault or battery . . . is guilty of Burglary." (Emphasis added .)  Grimes' counsel responded to the district court's untimely disclosure by telling the court, "I think that would have been a correct response."  Three weeks later Grimes filed a motion for a new trial explaining that, "[i]n retrospect, defendant feels that more clarification would have aided the jury in coming to an accurate verdict."

18
19
20
21
22
23
24
25
26
27
28

Grimes relies on two Ninth Circuit cases to argue that the district court's failure to notify defense counsel about the jury's inquiry violated his constitutional rights and requires automatic reversal of his burglary conviction.  See Musladin v. Lamarque, 555 F.3d 830, 842 (9th Cir. 2009); United States v. Barragan-Devis, 133 F.3d 1287, 1289 (9th Cir. 1998).  He omits decisions from other federal circuits that may undermine his contention.  See, e.g., United States v. Widgery, 778 F.2d 325, 329 (7th Cir. 1985) ("A judge's failure to show jurors' notes to counsel and allow them to comment before responding violates Fed. R. Crim. P. 43(a), not the constitution.").  But cf., Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004).  Regardless, decisions of the federal district court and panels of the federal circuit court of appeals are not binding on Nevada courts.  United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1075-76 (7th Cir. 1970).  Even if we applied the Ninth Circuit's analysis to the district court's decision not to notify Grimes about the juror note, he would not be entitled to relief because any error was harmless beyond a reasonable doubt.  [Footnote 1: To the extent that Grimes argues that the Ninth Circuit would apply a "rule of automatic reversal," we note that the panel of the Ninth Circuit that decided Musladin affirmed the state court's application of the harmless error standard by agreeing that the state court's decision "was not objectively unreasonable." Musladin, 555 F.3d at 842-43.  Their proposed application of a "rule of automatic reversal" is dicta.  Id.; see also United States v. Moshen, 587 F.3d 1028, 1032 (9th Cir. 2009) ("We never suggested that

all errors regarding jury communications during deliberations were subject to automatic reversal."); United States v. Arroyo, 514 F. App'x 652, 655 (9th Cir. 2013) (reviewing jury note error to determine whether it is harmless beyond a reasonable doubt), cert. denied sub nom. Zepeda v. United States, ___ U.S. ___, 134 S. Ct. 191 (2013).] Three factors are typically cited in evaluating harmlessness in the context of jury notes in the Ninth Circuit: (1) "the probable effect of the message actually sent"; (2) "the likelihood that the court would have sent a different message had it consulted with appellants beforehand"; and (3) "whether any changes in the message that appellants might have obtained would have affected the verdict in any way." Barragan-Devis, 133 F.3d at 1289 (internal quotation marks omitted); United States v. Frazin, 780 F.2d 1461, 1470 (9th Cir. 1986). Because the district court did not send a message to the jury, there is nothing to suggest that it did anything to influence the jury's decision. Furthermore, counsel told the district court that he would have only asked it to tell the jury to re-read the instructions that had already been given, had the district court consulted with him before the verdict. And, in light of the wide discretion given to the district court in responding to a jury's questions, counsel may not have succeeded in persuading the court to provide such an answer. See Scott v. State, 92 Nev. 552, 555, 554 P.2d 735, 737 (1976) (district court's refusal to answer a question already answered in the instructions is not error). Even if counsel was successful at persuading the district court, such a response is unlikely to have changed the jury's verdict. Therefore, any violation of Grimes' constitutional rights caused by the district court's failure to disclose the jury note was harmless beyond a reasonable doubt and Grimes is not entitled to relief on this claim. Although Grimes is not entitled to relief on this claim, we caution the district court that it has an obligation to inform counsel of any questions that arise during jury deliberations before the jury returns its verdict regardless of whether the district court intends to answer those questions.

Ex. 78 at 6-8 (ECF No. 22-33 at 7-9).

This court cannot grant relief if the Nevada Supreme Court erred in concluding that the trial court's error was harmless; instead, relief is available only if the Nevada Supreme Court applied harmless-error review in an "objectively unreasonable" manner. Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003). The court determines that the Nevada Supreme Court was not objectively unreasonable. The Nevada Supreme Court adopted its harmless-error analysis from United States v. Barragan-Devis, 133 F.3d 1287 (9th Cir. 1998), which had a similar set of facts. In Barragan-Devis, the jury sent a note to the district judge, who neither responded to the jury nor informed the parties at the relevant time. Id. at 1289. The Ninth Circuit held that the district judge had committed a constitutional error. Id. The Ninth Circuit then held that the error was harmless, using the three factors quoted above. First, the judge did not respond to the note and thus had no effect upon the jury. Id. at 1289-90. Second, the judge likely would have made the same decision not to respond even if the judge had consulted with the parties, because the jury had the

relevant instructions. <u>Id.</u> at 1290.  If the defendant had filed a motion for a new trial, then the judge would have had the opportunity to explain why he ignored the noted.  <u>Id.</u>  Third, even if the defendant had convinced the judge to respond, then the judge's response would have been for the jury to refer to the instructions.  <u>Id.</u>

As for the Nevada Supreme Court's analysis, the first factor is identical with <u>Barragan-Devis</u>.  The second factor is even more in favor of harmless error than in <u>Barragan-Devis</u>, because the state district judge did explain after the verdict why she did not respond to the note, and she confirmed that explanation by denying Grimes' motion for a new trial.  Third, in Grimes' case there was no need to assume what would have happened if Grimes had convinced the judge to respond, because she said that the only response would have been to tell the jurors to refer to their instructions and to continue deliberating.  This court concludes that the Nevada Supreme Court's harmless-error analysis was not objectively unreasonable.  Ground 7 is without merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 7.

### D.      Ground 8 Is Without Merit

Ground 8 is a claim that the prosecution failed to present sufficient evidence to sustain a conviction for burglary beyond a reasonable doubt.  On this issue, the Nevada Supreme Court held:

> First, Grimes contends that there was insufficient evidence to support his burglary conviction.  We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>McNair v. State</u>, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).
>
> Here, evidence was presented that Grimes forced his way into his estranged wife's apartment shortly after she and her mother returned home in violation of a temporary protective order against him.  Grimes stood near the front door begging and pleading with his wife to take him back.  A woman's voice could be heard on the 911 recording repeatedly telling Grimes to leave the apartment.  Grimes' wife stood about five to seven feet away from the front door, near the kitchen counter, while her mother waited outside on the balcony for the police to arrive.  When the mother heard her daughter scream out, "Mom, he's stabbing me," she turned around and saw her daughter on the ground near the front door with Grimes on top of her.  According to the victim, Grimes walked over to the kitchen counter, grabbed a knife from a drying rack next to the kitchen sink, and dragged her back to the front door before stabbing her 21 times.

> We conclude that a rational juror could infer from these circumstances that Grimes entered the apartment with the intent to commit assault or battery, gained possession of a deadly weapon, and violated a temporary protective order.  <u>See</u> NRS 193.166 [2009]; NRS 205.060(1), (4) [2005].  The jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the conviction.  <u>Bolden v. State</u>, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); <u>Buchanan v. State</u>, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (circumstantial evidence alone may sustain a conviction); <u>McNair</u>, 108 Nev. at 56, 825 P.2d at 573 ("[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses.").

ECF No. 22-33 at 1-2.  As the court has done earlier in this order, it adds two items of evidence. First, Grimes lurked behind stairs near the entrance to the apartment, out of view of anyone approaching the front door, waiting for his wife to return.  ECF No. 20-1 at 165.  Second, after Grimes' wife rejected him for the last time, he said "OK," then grabbed the knife, grabbed his wife, dragged her back to the door, and stabbed her.  ECF No. 20-1 at 120.  That was evidence that Grimes had at least a conditional intent to commit assault or battery if his wife rejected him. Based upon that evidence, the Nevada Supreme Court reasonably concluded that the evidence was sufficient to support the burglary conviction.  Ground 8 is without merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court dismisses it.

### E.      Ground 2 Is Without Merit

Grimes was charged with both attempted murder and battery.  As a matter of former decisional law, the Nevada Supreme Court had adopted a same-conduct test for determining whether two offenses were redundant under state law.  <u>See Salazar v. State</u>, 70 P.3d 749, 751 (Nev. 2003), <u>disapproved of by</u> Jackson v. State, 291 P.3d 1274, 1282 (Nev. 2012).  At some point in the proceedings, probably during the settling of jury instructions in chambers, the parties and the judge discussed whether count 3, battery, would merge into count 1, attempted murder, if the jury found Grimes guilty of both charges.  On October 15, 2012, the jury found Grimes guilty of all counts.

On December 6, 2012, the Nevada Supreme Court decided <u>Jackson</u>.  First, the Nevada Supreme Court determined that the offenses of attempted murder and battery each had an element of proof that the other offense did not.  Consequently, battery was not a lesser-included offense of attempted murder, and a conviction for both offenses arising out of the same conduct did not

1   violate the Double Jeopardy Clause of the Fifth Amendment.  291 P.3d at 1280 (citing

2   Blockburger v. United States, 284 U.S. 299 (1932)).

3          Next, the Nevada Supreme Court addressed Nevada's same-conduct test for determining

4   whether two offenses are redundant under state law.  The Nevada Supreme Court had addressed a

5   similar issue in Barton v. State, 30 P.3d 1103 (Nev. 2001) (en banc).  In Barton, the Nevada

6   Supreme Court determined that an instruction for a lesser-included offense was required if the

7   two offenses shared the same elements, and that such an instruction was not required if the two

8   offenses arose out of the same conduct.  Id. at 694-95.  Jackson notes that Barton's rule applied in

9   other contexts, "including specifically, to questions of 'whether the conviction of a defendant for

10  two offenses violates double jeopardy,' 'whether a jury finding of guilt on two offenses was

11  proper,' and 'whether two offenses merged.'"  Jackson, 291 P.3d at 1281 (quoting Barton, 30 P.3d

12  at 689-90.  Jackson then noted that, notwithstanding Barton, a panel of the Nevada Supreme

13  Court used a same-conduct test to rule that a conviction of battery with the use of a deadly

14  weapon causing substantial bodily harm was redundant to a conviction of mayhem with a deadly

15  weapon.  Id. (citing Salazar v. State, 60 P.3d 749, 751-52).  Following the lead of the Supreme

16  Court of the United States in United States v. Dixon, 509 U.S. 688 (1993), the Nevada Supreme

17  Court discarded the same-conduct test as unworkable and disapproved of Salazar and earlier

18  decisions.  291 P.3d at 1282.  It held that if the state legislature has authorized, or prohibited,

19  cumulative punishment, then the legislative directive controls.  Id.  Otherwise, the state courts

20  must use Blockburger, which allows cumulative punishment unless, in terms of their elements,

21  one offense is the same offense or a lesser-included offense of the other.  Id.

22         At the sentencing hearing on February 7, 2013, Grimes moved to dismiss count 3 as

23  redundant to count 1.  Ex. 53 at 9 (ECF No. 22-8 at 10).  The prosecution opposed the motion

24  because, based on Jackson, Grimes could be convicted of both attempted murder and battery.  Id.

25  The court continued the sentencing for both Grimes and the court to become familiar with

26  Jackson.  Id. at 11 (ECF No. 22-8 at 12).  About 12 minutes later, Grimes' counsel Nadia Hojjat

27  asked to recall that case.  She wanted to order transcripts of the hearing that discussed whether

28  Grimes could be adjudicated guilty of count 3.  The judge recalled that it was discussed, and she

14

1   was sure that she said that count 3 would be dismissed.  But, she warned defense counsel that if

2   the case law says differently, then defense counsel could not hold her to that statement.  Id. at 12-

3   13 (ECF No. 22-8 at 13-14).  The sentencing hearing resumed on February 12, 2013.  Grimes'

4   other counsel Roger Hillman argued that application of Jackson to Grimes' case  would be a

5   violation of the Ex Post Facto Clause.  Ex. 55 at 2-4 (ECF No. 22-10 at 3-5).  Hillman argued that

6   if application of Jackson was not an ex post facto violation, then the defense attorneys provided

7   ineffective assistance by advising Grimes that counts 3 would be dismissed if he was found guilty

8   of both counts 1 and 3 and by structuring their defense around that assumption.  Id.  The state

9   district court noted that nothing in Jackson was different than any other appellate-court decision

10  that applies to cases in which the judgments of conviction are not final and overruled Hillman's

11  objection.  Id.

12        Ground 2 contains multiple claims of ineffective assistance of counsel, both trial and

13  appellate, regarding their handling of the Jackson issue.  The court will address each separately.

14              **1.      Moving to dismiss count 3 earlier than sentencing**

15        Grimes argues that trial counsel should have moved to dismiss count 3 before the

16  sentencing hearing.  For example, if counsel moved to dismiss count 3 when the jury found him

17  guilty on October 15, 2012, the motion would have occurred before the decision in Jackson.  On

18  this issue, the Nevada Court of Appeals held:

19        Second, Grimes claimed trial counsel should have moved to dismiss count 3 prior
          to Grimes' sentencing hearing on the ground that it was redundant to count 1.
20        [Footnote 1:  At the time Grimes' jury returned its guilty verdicts in October 2012,
          Nevada caselaw prohibited multiple convictions that arose from the same illegal
21        act or course of conduct.  See Salazar v. State, 119 Nev. 224, 228, 70 P.3d 749,
          751 (2003), disapproved of by Jackson v. State, 128 Nev. 598, 611, 291 P.3d 1274,
22        1282 (2012).  Jackson was decided in December 2012 and Grimes was sentenced
          in February 2013.]  Grimes failed to demonstrate deficiency.  Grimes did not
23        demonstrate counsel was objectively unreasonable in planning to wait until
          sentencing to move to dismiss count 3.  Grimes concedes Jackson's change in law
24        was unforeseeable, and counsel cannot be ineffective for failing to predict an
          unforeseeable change in law.  See Nika v. State, 124 Nev. 1272, 1293-94, 198 P.3d
25        839, 854 (2008).  We therefore conclude the district court did not err by denying
          this claim.
26

27  Ex. 142 at 2-3 (ECF No. 26-4 at 3-4).  "[A] a court deciding an actual ineffectiveness claim must

28  judge the reasonableness of counsel's challenged conduct on the facts of the particular case,

1    viewed as of the time of counsel's conduct." <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984).

2    Consequently, a lawyer cannot be held responsible for failing to anticipate a later decision.  <u>See</u>

3    <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  Additionally, even if counsel did anticipate

4    the decision in <u>Jackson</u>, a lack of a motion to dismiss count 3 still would not be ineffective

5    assistance.  First, not until the jury found Grimes guilty of both attempted murder and battery was

6    the issue of redundant offenses ripe.  The judge in all likelihood would have deferred the matter

7    until sentencing, waiting to learn if the jury's verdicts made the matter moot.  Second, as

8    described more below, counsel had reasons to keep the battery count as one of the charges.  The

9    Nevada Court of Appeals reasonably applied <u>Strickland</u>.  This aspect of ground 2 is without

10    merit.  Reasonable jurists would not find the court's determination to be debatable or wrong, and

11    the court will not issue a certificate of appealability on ground 2.

12              **2.**        **Detrimental reliance**

13         Grimes argues that trial counsel should have argued at sentencing that Grimes had

14    detrimentally relied on statements that count 3, battery, would merge into count 1, attempted

15    murder.  On this issue, the Nevada Court of Appeals held:

16              Third, Grimes claimed that trial counsel should have argued at his sentencing
                hearing that count 3 should be dismissed because Grimes had detrimentally relied
17              on the State's assertions during trial that count 3 would merge into count 1 should
                the jury return guilty verdicts as to both counts.  Grimes' bare claim failed to
18              demonstrate deficiency or prejudice.  Grimes did not allege that counsel, who
                Grimes admits did not foresee the change in law, would have acted differently had
19              the State not agreed during trial that the counts would merge.  He thus failed to
                demonstrate that he relied on the State's agreement to his detriment.  We therefore
20              conclude that the district court did not err by denying this claim.  <u>See</u> <u>Hargrove v.</u>
                <u>State</u>, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).  [Footnote 2: To the extent
21              Grimes raised detrimental reliance as an independent ground for relief, the claim
                was procedurally barred.  See NRS 34.810(1)(b)(2).  And for the reasons just
22              discussed, Grimes failed to demonstrated [sic] good cause or actual prejudice.  See
                NRS 34.810(1).]
23

24    Ex. 142 at 3 (ECF No. 26-4 at 4).  The federal petition, which contains excerpts of Grimes'

25    opening brief in the appeal from the denial of the post-conviction petition, confirms the Nevada

26    Court of Appeals.  Grimes indeed did not allege that trial counsel would not have acted

27    differently if the prosecution did not agree that the battery count would merge into the attempted

28    murder count.  <u>See</u> ECF No. 7 at 19-22.  Additionally, any such allegation would be untrue.  At

the evidentiary hearing, trial counsel Hillman testified about the defense strategy.  The defense's

ultimate hope was that the jury would find Grimes not guilty of both attempted murder and

battery.  However, the defense also wanted the battery count to remain as a possibility for a

compromise verdict of not guilty of attempted murder and guilty of battery.  The potential

sentence for battery would have been less than the potential sentences for attempted murder with

the use of a deadly weapon.  Ex. 128 at 25-26 (ECF No. 25-1 at 26-27).  In short, it did not matter

whether the trial court or the prosecution agreed that count 3 would merge into count 1.  Trial

counsel still would have wanted the battery count to remain on the verdict form, to have given the

jury the possibility of finding Grimes not guilty of the offense with the greater potential sentences

and guilty of the offense with the lesser potential sentences.  When Grimes' request for a self-

defense instruction was denied, this strategy was Grimes' best hope for not being found guilty of

attempted murder.  The Nevada Court of Appeals reasonably applied Strickland, and this part of

ground 2 is without merit.  Reasonable jurists would not find the court's determination to be

debatable or wrong, and the court will not issue a certificate of appealability for this part of

ground 2.

### 3.    Ex post facto concerns

Grimes next argues that trial counsel should have argued at the sentencing hearing that

application of Jackson violated the Ex Post Facto clause, and that appellate counsel should have

raised the ex post facto claim on direct appeal.  On these issues, the Nevada Court of Appeals

held:

> Fourth, Grimes claimed trial counsel should have argued at his sentencing hearing
> that the application of Jackson to his case violated the Ex Post Facto Clause.
> Grimes failed to demonstrate deficiency or prejudice.  The Ex Post Facto Clause
> prohibits legislatures from enacting statutes that apply retroactively to the
> disadvantage of an offender.  Stevens v. Warden, 114 Nev. 1217, 1221, 969 P.2d
> 945, 948 (1998) (citing Lynce v. Mathis, 519 U.S. 433, 441 (1997)).  Through the
> Due Process Clause, courts apply the same principles to judicial decisions,
> prohibiting the retroactive application of new and unexpected interpretations of
> statutes that would disadvantage an offender.  See id.  The holding in Jackson
> overturning Nevada's redundancy doctrine was not the result of statutory
> interpretation.  See generally Jackson, 128 Nev. at 608-12, 291 P.3d at 1280-83
> (adopting the test announced in Blockburger by United States, 284 U.S. 299
> (1932), as the sole test for a double jeopardy violation); see also Sweat v. Eighth
> Judicial Dist. Court, 133 Nev. ___, ___ n.3, 403 P.3d 353, 355 n.3 (2017) (noting
> that Jackson overruled this portion of Salazar).  Accordingly, any claim that

applying <u>Jackson</u> violated ex post facto principles would have been futile.  We therefore conclude the district court did not err by denying this claim.

Fifth, Grimes claimed appellate counsel should have raised the Ex Post Facto Clause claim on appeal instead of in a motion to correct an illegal sentence.  For the reasons discussed above, we conclude counsel was not deficient for failing to raise this futile claim on direct appeal and Grimes was not prejudiced by counsel's ill-fated attempt to raise the claim in a motion to correct an illegal sentence.  We therefore conclude the district court did not err by denying this claim.

Ex. 142 at 3-4 (ECF No. 26-4 at 4-5).  For the sake of accuracy, the court notes that Hillman did argue at the sentencing hearing that application of <u>Jackson</u> violated the Ex Post Facto Clause. The state district court quickly rejected the argument.  Ex. 55 at 2-4 (ECF No. 22-10 at 3-5).

The Nevada Court of Appeals applied an incorrect standard.  The Due Process clause does not incorporate principles of the Ex Post Facto clause to judicial decisions.  The problem began with dicta in <u>Bouie v. City of Columbia, 378 U.S. 347 (1964).</u>  "An ex post facto law has been defined by this Court as one that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action, or that aggravates a crime, or makes it greater than it was, when committed.  If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction."  <u>Id.</u> at 353-54 (citation and quotations omitted).  The Court later clarified that any mention of the Ex Post Facto Clause in <u>Bouie</u> was dicta.  <u>Rogers v. Tennessee,</u> 532 U.S. 451, 458-59 (2001).  The true rule of <u>Bouie</u> is the due-process principle that a person had fair warning of the judicial decision in question.  <u>Id.</u> at 459-60.  The Court noted that a strict application of the Ex Post Facto Clause to judicial decisions would be contrary to the development of precedent that occurs through the common-law system. <u>Id.</u> at 461.  The Court then noted that, because of those concerns, "<u>Bouie</u> restricted due process limitations on the retroactive application of judicial interpretations of criminal statutes to those that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'"  <u>Id.</u> at 461 (quoting <u>Bouie,</u> 378 U.S. at 354).

The issue in <u>Rogers</u> involved retroactive application of a decision that abrogated the old common-law year-and-a-day rule, not a statute.  Rogers stabbed his victim on May 6, 1994, and the victim died on August 7, 1995.  532 U.S. at 454.  The jury found Rogers guilty of murder.  On

18

appeal, Rogers argued that he could not have been guilty of murder because the victim died more than a year and a day after he had stabbed the victim.  The Tennessee Supreme Court determined that the year-and-a-day rule did still exist in Tennessee, but that the original reasons for the rule no longer existed.  The Tennessee Supreme Court thus abolished the rule and held that the abolition could apply retroactively to Rogers.  Id. at 455.  The United States Supreme Court held that the retroactive application of the abolition of the rule was not unexpected and indefensible.  Advances in medical science made the rule obsolete.  Id. at 463.  The vast majority of jurisdictions had abolished the rule either legislatively or judicially.  Id. at 463-64.  Finally, although the rule did exist in Tennessee, it never had been part of Tennessee statutory law.  Id. at 464.  The Tennessee Supreme Court had mentioned it only once, in 1907, and in the handful of other cases in which the rule was mentioned, it was only in dicta and not a ground of decision.  Id. at 464-66.

The Nevada Court of Appeals held that ex post facto principles did not apply to retroactive application of Jackson because Jackson did not interpret a statute, but changed a judge-made rule.  Ex. 142 at 3-4 (ECF No. 26-4 at 4-5).  That was contrary to Rogers, which did address the retroactive application of the abolition of a common-law rule.

Nonetheless, under de novo review, the court finds that the claim is without merit, because Grimes suffered no prejudice.  Jackson was neither unexpected nor indefensible by reference to law expressed before Grimes' offenses.  Barton established in 2001 that the same-elements test, not the same-conduct test, should be used for determining whether to instruct the jury on a lesser-included offense.  Barton noted that its rule should apply to other contexts, such as whether a conviction for two offenses violate the Double Jeopardy Clause, whether the jury may find a person guilty of two offenses, and whether under state law two offenses merged into one.  Barton, 30 P.3d at 689-90.  However, two years later, Salazar did not follow Barton's dictum that its rule should apply to other contexts, and it applied an earlier decision that used a same-conduct test to determine whether two offenses were the same.  Salazar, 70 P.3d at 752.  In effect, the Nevada Supreme Court had two conflicting lines of decision.  Salazar was more favorable to Grimes, but Barton still existed.  In Grimes' case, it would mean that the trial court could not have given the

1  jury an instruction that battery is a lesser-included offense of attempted murder, but then, after the

2  jury found Grimes guilty of both offenses, the trial court would have needed to dismiss the count

3  of battery as redundant to attempted murder.  One line that used a same-elements test for a jury

4  instruction on lesser-included offenses and another line that used a same-conduct test for

5  determining whether one offense was redundant to another offense could not both remain intact

6  for long.  The same-conduct test of <u>Salazar</u> was more tenuous, because the Nevada Supreme

7  Court had noted in <u>Barton</u> that courts should use the same-elements test for determining whether

8  one crime was a lesser-included offense of another crime.  Grimes had fair warning that the

9  Nevada Supreme Court eventually would need to choose one line of decision or the other, and

10  that the <u>Salazar</u> line likely would be the loser.

11      Grimes had no reasonable probability of a different result had appellate counsel raised the

12  retroactive application of <u>Jackson</u> on direct appeal.  Grimes thus has failed to demonstrate

13  prejudice.  The court thus does not need to determine whether appellate counsel performed

14  deficiently by not raising the issue.  <u>Strickland</u>, 466 U.S. at 697.  This part of ground 2 is without

15  merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the

16  court will not issue a certificate of appealability for this part of ground 2.

17      **F.      Ground 3 Is Without Merit**

18      Ground 3 is a claim that trial counsel was ineffective because trial counsel did not argue

19  that a steak knife is not a deadly weapon.  Nevada law defines a "deadly weapon," in relevant

20  part, as "[a]ny weapon, device, instrument, material or substance which, under the circumstances

21  in which it is used, attempted to be used or threatened to be used, is readily capable of causing

22  substantial bodily harm or death."  Nev. Rev. Stat. § 193.165(6)(b).  Nevada law defines

23  "substantial bodily harm" as, "[b]odily injury which creates a substantial risk of death or which

24  causes serious, permanent disfigurement or protracted loss or impairment of the function of any

25  bodily member or organ," or "[p]rolonged physical pain."  Nev. Rev. Stat. § 0.060.  On this issue,

26  the Nevada Court of Appeals held:

27      First, Grimes claimed trial counsel should have argued the steak knife was not a
       deadly weapon.  Grimes failed to demonstrate deficiency or prejudice.  Grimes'
28      jury was instructed in accordance with NRS 193.165(6)(b) that a deadly weapon is

20

any instrument that, "under the circumstances in which it is used . . . is readily capable of causing substantial bodily harm or death."  Grimes used the knife to stab his victim 21 times and at least twice nearly hit major arteries in the chest and neck areas, the victim was hospitalized as a result of Grimes' attack and subsequently had to undergo physical therapy and a surgery, and the jury was shown the extensive scarring caused by the attack.  From this, it is clear Grimes used the knife in a manner readily capable of causing substantial bodily harm, and any argument from counsel that the knife was not a deadly weapon would have been futile.  We therefore conclude the district court did not err by denying this claim.

Ex. 142 at 2 (ECF No. 26-4 at 3).  This was a reasonable application of Strickland.  Ground 3 is without merit.  Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

### G.      Ground 9 Is Without Merit

Ground 9 is a claim that the cumulative effect of errors at trial violated Grimes' right to a fair trial.  On this claim, the Nevada Supreme Court ruled on direct appeal:

Fifth, Grimes contends that cumulative error warrants reversal. "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." Valdez v. State, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (internal quotation marks omitted). Having considered these factors we conclude that the cumulative effect of any errors does not entitle Grimes to the reversal of his convictions[.]

Ex. 78 at 8-9 (ECF No. 22-33 at 9-10).  The Nevada Supreme Court found two errors that were harmless—the decision not to give a self-defense instruction and the decision not to inform the parties of the jury question until after the verdict.  This court determined that both of those determinations were not contrary to, or an unreasonable application of, clearly established federal law.  Consequently, the Nevada Supreme Court reasonably determined that the cumulative effect of the errors did not warrant reversal.  Ground 9 is without merit.  Reasonable jurists would not find the court's determination to be debatable or wrong, and the court will not issue a certificate of appealability.

1

**H.     Ground 5 Is Without Merit**

2      Ground 5 is a claim of the cumulative effect of errors on direct appeal and the

3  ineffectiveness of trial counsel and appellate counsel.  On this issue, the Nevada Court of Appeals

4  held on appeal from the denial of the state post-conviction petition:

5      Finally, Grimes claimed the cumulative errors of trial and appellate counsel
   warrant relief.  Even assuming any such errors could be cumulated, see McConnell
6      v. State, 125 Nev. 243, 259, 212 P.3d 307, 318 (2009) (noting the Nevada
   Supreme Court has never adopted a standard to evaluate such claims in
7      postconviction proceedings), Grimes failed to demonstrate any error such that
   there was nothing to cumulate.  We therefore conclude the district court did not err
8      by denying this claim[.]

9  Ex. 142 at 5 (ECF No. 26-4 at 6).  The Nevada Court of Appeals did not fully address the claim

10 that Grimes presented, which was that the cumulative effect of errors of trial and appellate

11 counsel and errors on direct appeal warranted relief.  Nonetheless, the Nevada Court of Appeals

12 reached a reasonable conclusion.  The cumulative-error claim on direct appeal failed for the

13 reasons noted above concerning ground 9.  In the state post-conviction proceedings, the Nevada

14 Court of Appeals found no errors of trial counsel or appellate counsel, and thus determined that

15 no errors existed to cumulate.  Ground 5 thus becomes, in effect, a repeat of ground 9, and it is

16 without merit for the same reason.  Reasonable jurists would not find the court's determination to

17 be debatable or wrong, and the court will not issue a certificate of appealability.

18     **I.     The Court Will Not Issue a Certificate of Appealability for Ground 1**

19     Ground 1 was a claim of ineffective assistance of post-conviction counsel.  The court

20 dismissed the ground on screening because Grimes has no constitutional right to post-conviction

21 counsel.  ECF No. 6 at 1 (citing Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989)).

22 Reasonable jurists would not find this determination to be debatable or wrong, and the court will

23 not issue a certificate of appealability for ground 1.

24 ///

25 ///

26 ///

27 ///

28 ///

1

## V.     Conclusion

2          IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus (ECF No. 7)

3    is **DENIED**.  The clerk of the court is directed to enter judgment accordingly and to close this

4    action.

5          IT FURTHER IS ORDERED that a certificate of appealability will not issue.

6          DATED:  March 28, 2022

7
                                                    _____
8                                                   GLORIA M. NAVARRO
                                                    United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28